In the Matter of the Estate of CORNELIA A. ANDREWS, Deceased.

Surrogate's Court, Washington County, January 19, 1934.

*Elizabeth A. Smart*, for the administrator.

*William S. Lawton*, for Zerola I. Hendrickson.

VAN KIRK, S. The last will and testament of Cornelia A. Andrews contained the following clause:

" *Eighth*. I give and devise, provided however she observe the conditions hereinafter mentioned, to my granddaughter, Zerola I. Hendrickson, the use of my house and lot in the Village of Cambridge, Washington County, New York, during the term of her natural life; and at her death I give and devise the said house and lot in equal shares to my grandsons, Ernest C. Matteson and Clayton P. Matteson. The conditions on which I make this gift to my granddaughter are that she shall keep the place in good repair and pay all taxes and assessments thereon, and the interest on the mortgage, if any. My executor, hereinafter named, shall be the sole judge of what constitutes good repair, and his decision in the matter shall be final. Should my said granddaughter fail to observe these conditions or any of them, then I direct that her life estate shall immediately cease and determine, and that the gift over to my grandsons shall take effect immediately. Should the place be sold before my death, then I give and bequeath to my said executor, in trust nevertheless, the proceeds thereof, or so much as shall remain unused of the same at my death, to invest and reinvest the same and pay over the income therefrom to my said granddaughter during the term of her natural life, and upon her death to pay over the principal in equal shares to my said grandsons."

The tenth clause of the will reads as follows:

" *Tenth*. Should my said granddaughter, Zerola I. Hendrickson, her father, her husband, her son, or anyone whatsoever on her behalf, or her said father, husband, or son on their own behalf or on behalf of any one of them, bring in any bills against my estate, then I direct that she shall take nothing under this my Will, but that any gifts that shall have been made to her in my said Will, or any share to which she might be entitled in my estate, shall go in equal shares to my two grandsons, Ernest C. Matteson and Clayton P. Matteson, and I hereby give, devise and bequeath the same to them."

The will of the decedent was admitted to probate March 29, 1933. Some months thereafter, O. E. Matteson, the father of Zerola I. Hendrickson, presented to the administrator with the will annexed a bill against the estate which upon its face was outlawed and had been barred by the Statute of Limitations for more than a year prior to decedent's death. The claim was rejected by the administrator with the will annexed but nevertheless the claimant appeared upon the judicial settlement to prove his claim in person.

In these circumstances the court is asked to construe the tenth clause of the will and to determine whether or not the presentation to the administrator with the will annexed of the outlawed claim defeats the bequest made to Zerola I. Hendrickson in the eighth clause of the Will.

Zerola I. Hendrickson, the beneficiary of the life use of the house and lot in the village of Cambridge, is the daughter of decedent's daughter. The claimant O. M. Matteson is the father of Zerola I. Hendrickson. Clayton P. Matteson, the administrator with the will annexed, is her brother. Ernest C. Matteson is also a brother. Clayton P. Matteson and Ernest C. Matteson are the remaindermen named in the eighth clause of the will. The administrator with the will annexed very emphatically urges that the presentation of the claim deprives Zerola I. Hendrickson of all rights under the will.

If this interpretation of the tenth clause of the will is accepted, the two brothers, Clayton P. Matteson and Ernest C. Matteson, will enter into immediate possession and ownership of the house and lot in Cambridge and the situation would then be that a father has defeated a bequest to his daughter by presenting to one of his sons an outlawed claim and thereby that son and another son would immediately benefit. I cannot accept this interpretation.

The rules for the construction of wills are probably as well settled as the legal rules in any branch of the law. Numerous authorities setting forth these well-established rules are cited upon the briefs of counsel in this case. They all hold that every person may dispose of his or her property in any manner he or she may choose so long as such disposition does not contravene established rules of law or is not against public policy or is not so unreasonable as to be unconscionable and absurd.

In this particular case the court feels that the provisions of the tenth clause of decedent's will are unreasonable and so unfair as to be fairly construed to be against public policy because they subject the life beneficiary to conditions over which she has no control whatever and further place her in a position where she is at the mercy of others who will benefit by her defeat in the sense that under the provisions of the tenth clause of the will remaindermen might arrange with their father to present a claim, even though invalid, and thereby void the bequest to their sister and daughter and thereby benefit the sons by putting them into immediate possession and ownership of the house and lot. The court does not mean by the use of this language that it is convinced that the father and sons have in fact arranged a plot to defeat the bequest to the daughter but that the provisions of the tenth clause of the

will make such an arrangement entirely possible. Indeed they afford the means of absolutely depriving the life beneficiary of her rights under the will by persons interested and to be benefited by depriving her of those rights. The decedent by providing that the life beneficiary should not receive any rights under the will if other persons than herself brought in a bill against the estate, places in the hands of the remaindermen the means of absolutely defeating her providing they could arrange with their father to present a claim against the estate. In this view of it, the bequest to the beneficiary was entirely useless and might as well not have been made because other persons over whom the beneficiary had no control had the means at hand to defeat her rights under the will. The court cannot assume that the decedent was not serious in making her will. The fact that she made any provision for the granddaughter at all indicates that she was serious in making her will and intended that the granddaughter should receive benefits under it. Had she provided in her will that any beneficiary named in the will should be deprived of all rights under the will, if he or she presented a bill against the estate, the provisions would have been entirely reasonable and this is the interpretation which the court puts upon the language of the tenth clause of the will.

Another reasonable and fair interpretation of the language used in the tenth clause of the will would be that the decedent referred to a claim apparently valid upon its face and one which must be disposed of upon its merits. The expressions " bringing in any bills " and " presenting any bills " have the same meaning. The administrator urges that the mere bringing in or presenting a bill, whether valid or not, is sufficient and his energy and insistance upon this point afford the chief ground for a suspicion that this claim was presented for the purpose of defeating the bequest to the life beneficiary made in the eighth clause of the will, especially in view of the fact that the injury thereby is to his sister, whom he would naturally cherish, while the benefit of defeating her would be to himself. The mere act of presenting a claim would defeat the provisions of the eighth clause of the will. Such is not a fair interpretation, but a fair interpretation is that the decedent referred to a bill apparently valid upon its face and which required that it be disposed of upon its merits.

There is still another rule of law applicable to the interpretation of wills which may be pertinent. It is that a bequest absolute in its terms cannot be cut down or reduced by subsequent provisions in a will. The eighth and tenth clauses of the will do not afford precisely a case in point but they are certainly repugnant to each other. The eighth clause is absolute and complete and imposes

the conditions upon which the bequest of the life use of the house and lot is made. The tenth clause, if interpreted as the administrator desires to interpret it, would absolutely defeat the bequest by means which are absolutely beyond the life beneficiary to control. The tenth clause affords the absolute means of defeating the provisions of the eighth clause.

Counsel for the administrator has cited several cases intended to show that legatees had been placed at the mercy of others and the provisions of the will still upheld but none of these cases are precisely in point because they do not impose conditions beyond the control of the legatees or beneficiary. They do leave the interpretation of the question as to whether or not the legatee has fulfilled the conditions named in the will to a trustee or executor but nevertheless the conditions in every case cited could be fulfilled. In this case, however, the conditions imposed were entirely beyond the control of the legatee and never could be met by her. She could not prevent her father from presenting a bill or claim if he desired to do so and it is unreasonable to make the legacy to her depend upon the act of another over whom she has no control. No cases on the briefs of counsel are precisely in point and the court has been unable to find any perhaps for the reason that wills have very rarely contained provisions which imposed conditions beyond the control of a legatee. The court has found one case, however, somewhat in point (*Matter of Forte*, 149 Misc. 327). In that case a bequest to a child was to be voided in the event that the child came into the custody of his father by legal means or without the written consent of the trustee named in the will. This provision in the will was held to be void and against public interest.

It is, therefore, held that the provisions of the tenth clause of the will of this decedent are void and do not defeat the provision made in the eighth clause of the will for Zerola I. Hendrickson and she is entitled to a life use of the house and lot in Cambridge under the eighth clause of the will.

A provision to this effect should be inserted in the decree in judicial settlement.